STATE OF CONNECTICUT *v.* LIONEL BROWN
(11067)

FOTI, LAVERY and FREEDMAN, Js.

Argued September 20—decision released December 28, 1993

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Philip D'Eramo,* assistant state's attorney, and, on the brief, *Eugene J. Callahan,* state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted larceny in the third degree in violation of General Statutes §§ 53a-124 (a) (2) and 53a-49 (a), conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-124 (a) (2), criminal impersonation in violation of General Statutes § 53a-130 (a) (1) and forgery in the third degree in violation of General Statutes § 53a-140 (a).[1] The defend-

---

[1] The defendant was also charged with similar offenses arising out of an incident that occurred at People's Bank. He was acquitted of those charges.

ant claims that (1) the trial court improperly denied his motion for a new trial because (a) the trial court failed to hold a hearing once it received information alleging jury misconduct, and (b) the order to sequester the witnesses had been violated,[2] (2) the evidence was insufficient to support the defendant's conviction for forgery in the third degree, (3) the evidence was insufficient to support the defendant's conviction of attempted larceny in the third degree, and (4) the conviction of attempted larceny in the third degree together with the conviction of conspiracy to commit larceny in the third degree constitutes double jeopardy.[3] We reverse the judgment of the trial court in part and affirm it in part.

The jury could have reasonably found the following facts. On May 8, 1991, at approximately 2:45 p.m., the defendant entered the Gateway Bank in Wilton. He identified himself as Clifford Sailor and attempted to make a split deposit[4] involving two checks. One check for deposit was made out to and endorsed by Clifford Sailor in the amount of $728; the other check, in the amount of $960 made payable to and endorsed by Sailor, was to be cashed.

The teller was suspicious of the defendant because she was acquainted with Sailor, who is white, and the defendant is black. According to the teller, the endorsements on the checks appeared to be Sailor's. Because the defendant could not produce any identification, the teller refused to make the transactions. The defendant then left the bank, taking the checks with him. The

---

[2] The defendant did not include this claim in his statement of issues but, because he did adequately discuss it in his brief, we will address it here.

[3] The defendant included this claim as part of his second issue on appeal. We have elected to treat it separately.

[4] A split deposit is the simultaneous depositing of one or more checks and the cashing of another.

teller notified the bank manager of the incident and the manager put an alert signal into the bank computer system.

Soon thereafter, a man, who identified himself as Robert Black, attempted to make a split deposit involving three checks: two for deposit in the amounts of $776.10 and $78, and the third to be cashed in the amount of $880. All three were payable to Robert Black and endorsed in general on the back. He too lacked identification. The bank manager refused to make the transactions and the second man left. The bank manager then observed this man join the defendant and a woman in a car. The bank manager wrote down the license plate number of the car and called the Wilton police.

Shortly thereafter, Officer Gary Garuder of the Wilton police department stopped the car and arrested the three occupants. The driver, the woman, had identification in several names, along with $600 in cash. One of the men, the second man to enter the bank, had $453. The defendant had valid identification, $32, a deposit slip with Clifford Sailor's address written on it, a paper on which another name and address were written, and two checks totaling $1192 made out to Barbara Matison. Garuder seized a manila envelope from the car. Among the items in the envelope were various bank papers, checks, checkbooks, torn signature cards, customer receipts, and change of name forms.

After the verdict, the defendant filed a motion for a new trial and moved for a judgment of acquittal on all charges. These motions were denied by the court.

I

The defendant first claims that the trial court improperly denied his motion for a new trial because his state

and federal constitutional rights[5] were violated when the trial court failed to conduct a hearing regarding allegations of jury misconduct and the violation of the order sequestering the witnesses.[6] We disagree.

## A

The following additional facts are relevant to the claim of jury misconduct. The trial court received an anonymous note after the verdict was returned but before sentencing. The note was from "a concerned citizen and a discenchanted [sic] friend." The author was concerned about a recent trial and related that, while out with friends, a friend named Dana[7] told of being on a jury in the trial of "a black man . . . on trial for cashing bad checks." According to the letter, Dana reported that the jurors overheard the sheriffs "betting that the defendant would be found guilty because he was black and from New York." In addition, the letter stated that Dana told the author that she had overheard one sheriff tell another that a Wilton detective showed one of the witnesses some pictures because "the witness couldn't remember what the guy looked like."

[5] The defendant alleges deprivations of his right to a fair and impartial jury trial, and his right to due process and equal protection of the law, pursuant to the fifth, sixth, and fourteenth amendments to the United States constitution and article first, §§ 8 and 20, of the Connecticut constitution.

[6] Because the defendant has not provided an independent analysis to support his state constitutional claim, we will not review it. Our Supreme Court and this court have declined to review a defendant's state constitutional claim, deeming it to have been abandoned, when the defendant has not separately briefed and analyzed that claim. See, e.g., State v. Hernandez, 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); State v. Redente, 19 Conn. App. 521, 531 n.5, 563 A.2d 1365 (1989); State v. Thompson, 17 Conn. App. 490, 498 n.5, 554 A.2d 297, cert. denied, 211 Conn. 803, 559 A.2d 1136 (1989). That declination, however, does not mean that we are not able to review such a claim if we choose to do so. State v. Hoeplinger, 27 Conn. App. 643, 652 n.2, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); State v. Geisler, 25 Conn. App. 282, 283–84 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

[7] There was in fact a juror named Dana L. Clarke who was a member of the jury in the defendant's case.

The trial court gave the letter to the chief sheriff who directed a copy to the state's attorney. The trial court did not direct a copy to defense counsel. Defense counsel did not learn of the letter until the day of sentencing.[8] At that time, the defendant orally amended his motion for a new trial to include the alleged jury misconduct and violation of the sequestration order. The court heard brief argument on both the motion for judgment of acquittal and the motion for a new trial. The court denied both motions and an exception was taken.

"[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . A necessary component of the right to an impartial jury is the right to have the jury decide the case solely on the basis of the evidence and arguments given them in the adversary arena after proper instructions on the law by the court. . . . Consideration of extrinsic evidence is jury misconduct and has been found to be sufficient to violate the constitutional right to trial by an impartial jury. . . . Whether juror consideration of extrinsic evidence was prejudicial to a defendant depends on the magnitude of the juror's deviation from his proper role, the degree to which the accused was deprived of the benefits of the constitutional and statutory safeguards, and the likelihood that the impropriety influenced the jury's verdict. . . .

"Although the trial court enjoys broad discretion in determining whether jury misconduct occurred, and, if so, whether such misconduct prejudiced the defendant . . . the court must have some factual basis on which to exercise that discretion. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Migliaro,* 28 Conn. App. 388, 395, 611 A.2d 422 (1992).

---

[8] It was during the sentencing hearing that the court notified the defendant that it had received an anonymous letter the previous day.

In *Migliaro,* a juror brought two medical books to court during jury deliberations. The books were taken from the juror before she entered the deliberation room. The trial court declined to conduct a hearing of any kind. We remanded the matter to the trial court to determine whether jury misconduct had occurred and, if so, whether the defendant was prejudiced thereby. Id., 397.

Likewise, in *State* v. *Gonzalez,* 25 Conn. App. 433, 596 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992), we remanded the matter to the trial court to determine whether there was jury misconduct and, if so, whether the defendant was prejudiced thereby. In *Gonzalez,* a juror sent a note to the judge that read: " 'Your Honor, something was said by [another juror] that may have prejudiced the jury. May I speak to you about it?' " Id., 437. The court refused to discuss it with the juror or to inquire into the "something said."

In *Migliaro,* the trial court had no way of knowing whether the "juror or any other juror had utilized information from the books during the course of deliberations." *State* v. *Migliaro,* supra, 396. In addition, the "medical evidence was critical to the jury's resolution of the issue" in the case and the medical testimony concerned the "most hotly contested issue in the case." Id.

In *Gonzalez,* the note stated only that there was "something" said that may have been prejudicial. *State* v. *Gonzalez,* supra. Therefore, the trial court had no information as to what constituted the possible misconduct.

Here, unlike *Migliaro* and *Gonzalez,* the note itself set forth with specificity what the author alleged to be the misconduct. The trial court knew that the alleged misconduct was that the jurors overheard the sheriffs betting on the outcome of the case and that the jurors also overheard one sheriff tell another that a Wilton

detective had shown a picture to a witness. No hearing was necessary, therefore, to determine what had occurred or what the jurors may have overheard.

The trial court had a sufficient factual basis on which to determine whether jury misconduct had occurred and, if so, whether such misconduct had prejudiced the defendant. While the trial court did not articulate its decision, it is obvious that it either found that no jury misconduct had occurred, or, if it had, that there was no prejudice to the defendant. The fact that a sheriff may have bet that the defendant would be convicted because of his race or that a witness was coached could be helpful to the defendant in that it would tend to discredit the merits of the case and the credibility of the witness.

"A trial court has wide discretion in deciding how to pursue an inquiry into the nature and effect of information that comes to a juror improperly as well as its potential effect upon the jury if it learns of it." *State v. Rodriguez,* 210 Conn. 315, 326, 554 A.2d 1080 (1989). The decision of the trial court in reviewing alleged jury misconduct will be reversed only where it can fairly be said that the court abused its discretion. See id. The defendant has failed to demonstrate that the trial court abused its discretion in failing to conduct a hearing into the alleged jury misconduct, or in finding either that there was no jury misconduct or, if there was, that the defendant was not prejudiced thereby.

### B

The following additional facts are relevant to the claim that the order sequestering the witnesses was violated. At the commencement of trial, defense counsel requested and the trial court granted a motion to

sequester.[9] No additional or supplemental prohibitions were requested or included in the order. The anonymous note received by the court alleged that some jurors had overheard the sheriffs discussing the fact that a Wilton detective had shown a witness some pictures of the defendant because the witness could not remember what the defendant looked like. The defendant claims that this communication between the detective and the witness violated the sequestration order.

"The primary purpose of a sequestration order is to ensure that the defendant receives a fair trial by preventing witnesses from shaping their testimony to corroborate falsely the testimony of others. . . . Such orders may be effectuated upon a party's motion by court order. That order may impose a broader prohibition than that provided by the sequestration statute. . . . An inquiry into the facts and circumstances of each case is necessary to ascertain whether the purpose of a sequestration order has been thwarted. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Crumble*, 24 Conn. App. 57, 61, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991). If a party desires a broader prohibition than the sequestration statute provides, that party must request an order specifying that prohibition. *State* v. *Williams*, 169 Conn. 322, 331, 363 A.2d 72 (1975).

In this case, the defendant made no special requests with respect to the sequestration order. The order is, therefore, limited to the language of the sequestration statute.[10] See id. As provided by § 54-85a, only a wit-

---

[9] General Statutes § 54-85a provides: "In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying." See also Practice Book § 876.

[10] See footnote 9.

ness who was present in the courtroom "during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying" would violate the sequestration order. Here, no violation of the sequestration order occurred when a detective showed a witness some pictures, even if the detective was also a witness.

Therefore, the trial court properly denied the defendant's motion for a new trial.

## II

The defendant next claims that his conviction of forgery in the third degree should be reversed because the evidence was insufficient to support that conviction. We agree.

"To determine the sufficiency of the evidence to sustain a conviction, we apply a twofold test. . . . We first construe the evidence in the light most favorable to sustaining the verdict. . . . We then determine whether, from that evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . In this examination, we consider whether the [trier] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Maxwell*, 29 Conn. App. 704, 708, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993).

"When applying the sufficiency of the evidence test, the court must ensure that [e]ach essential element of the crime charged . . . be established by proof beyond a reasonable doubt, and although it is within the province of the [trier] to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot constitutionally stand, as it is violative of due process under the fourteenth amendment. . . . [T]he burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Lee,* 32 Conn. App. 84, 97, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993).

To prove forgery in the third degree, the state must establish beyond a reasonable doubt that the defendant, with intent to defraud, deceive or injure another, falsely made, completed, or altered a written instrument, or issued or possessed any written instrument that he knew to be forged. General Statutes § 53a-140.[11] At trial the only evidence produced concerning the forgery of the checks was (1) the manila envelope and its contents, (2) the defendant's conduct, and (3) the bank teller's statement that the endorsements on the checks looked like Sailor's signature. There was no evidence that the endorsements were not that of Sailor. This evidence, construed in the light most favorable to sustaining the verdict, is not sufficient to establish forgery beyond a reasonable doubt. The state claims that the circumstantial evidence of the contents of the manila

[11] General Statutes § 53a-140 (a) provides: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes, or alters a written instrument, or issues or possesses any written instrument which he knows to be forged."

envelope taken together with the defendant's conduct adequately evidences a forgery scheme involving the defendant. The state claims that the jury was entitled to infer that the checks were forged.

"Although the jurors may draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984). Because there was no evidence, whatsoever, as to the authenticity of the endorsements on the checks, to find beyond a reasonable doubt that the checks were forged would require speculation and conjecture on the part of the jury. We conclude, therefore, that as a matter of law the state did not prove beyond a reasonable doubt that the checks were forged. As a result, an essential element of the crime of forgery in the third degree was not proven beyond a reasonable doubt, and the conviction for forgery in the third degree must be reversed.

### III

The defendant next claims that his conviction of attempted larceny in the third degree should be reversed because the evidence was insufficient to support that conviction.[12] We agree.

To prove attempted larceny in the third degree the state must prove beyond a reasonable doubt that the defendant, acting with the mental state required for the commission of larceny in the third degree, intentionally does anything that is an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. General Statutes § 53a-49.[13] "A person commits larceny when, with

---

[12] For the discussion of the standard of review regarding sufficiency of the evidence see part II.

[13] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would

intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119. "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . the value of the property . . . exceeds one thousand dollars . . . ." General Statutes § 53a-124.

The grade of a larceny offense is determined by the value of the property taken. The value of the property is ascertained as set forth in General Statutes § 53a-121 (a).[14] Section 53a-121 (b) provides that "[a]mounts included in thefts *committed* pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense." (Emphasis added.)

---

constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[14] General Statutes § 53a-121 (a) provides: "For the purposes of this part, the value of property or services shall be ascertained as follows: (1) Except as otherwise specified in this section, value means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime. (2) Whether or not they have been issued or delivered, written instruments, except those having a readily ascertainable market value such as some public and corporate bonds and securities, shall be evaluated as follows: (A) The value of an instrument constituting evidence of debt, such as a check, draft or promissory note, shall be deemed the amount due or collectible thereon, such figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied; (B) the value of any other instrument which creates, releases, discharges or otherwise affects any valuable legal right, privilege or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of the loss of the instrument. (3) When the value of property or services cannot be satisfactorily ascertained pursuant to the standards set forth in this section, its value shall be deemed to be an amount less than fifty dollars."

The state asserts that the aggregation clause of General Statutes § 53a-121 (b) provides that in determining the grade of larceny of which the defendant may be convicted, the jury should aggregate the amount of the check the defendant attempted to cash together with the amount of the check the second man to enter the bank attempted to cash. We do not agree.

The language of § 53a-121 (b) refers only to aggregation for thefts *committed*. There is no provision providing for aggregation for thefts *attempted*.[15] "A guiding principle of our inquiry is that criminal statutes . . . should be strictly construed in favor of the accused." *State* v. *Whiteman,* 204 Conn. 98, 101, 526 A.2d 869 (1987). "It is a fundamental tenet of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. . . . We must construe statutory language strictly to avoid imposing criminal liability where none is expressly intended by the legislature. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacobson,* 31 Conn. App. 797, 802, 627 A.2d 474 (1993).

Additionally, "[i]n construing a statutory provision, we first look to its language, and if that language is plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. . . ." (Citations omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency,* 226 Conn. 579, 590, 628 A.2d 1286 (1993). Here, the relevant language of General Statutes § 53a-121 (b) is plain and unambiguous. To aggregate amounts included in thefts "pursuant to one scheme or course of conduct,

---

[15] "Commit" means "to carry into action . . . perpetrate." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993).

whether from the same person or several persons," the thefts by the very language of the statute must have been *committed* and not merely *attempted.*

In reviewing the sufficiency of the evidence this court construes the evidence in the light most favorable to sustaining the verdict. *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983). It must determine whether the fact finder reasonably could have concluded, on the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). "It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction." *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Foster,* 202 Conn. 520, 537–38, 522 A.2d 277 (1987).

At trial, the only evidence produced concerning the value of the property that the defendant attempted to obtain from the bank was the check the defendant attempted to cash in the amount of $960. Because we hold that General Statutes § 53a-121 (b), the aggregation statute, is not applicable to an attempted larceny, the value of the property that the second man attempted to obtain from the bank may not be used in ascertaining value for the purpose of determining the grade of larceny. The amount the defendant attempted to obtain did not exceed the $1000 minimum set forth for larceny in the third degree. Therefore, the state failed to prove an essential element of the crime of attempted larceny in the third degree, and the conviction of that crime must be reversed.

On many occasions, however, our Supreme Court and this court have modified judgments after reversal,

rather than remand for a new trial, or for a judgment of acquittal. See *State* v. *Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied,     U.S.    , 112 S. Ct. 877, 116 L. Ed. 2d 181 (1992); *State* v. *McGann*, 199 Conn. 163, 178–79, 506 A.2d 109 (1986); *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979); *State* v. *Grant*, 177 Conn. 140, 149, 411 A.2d 917 (1979); *State* v. *Jacobson*, 31 Conn. App. 797, 804–806, 627 A.2d 474, cert. granted, 227 Conn. 914, 632 A.2d 697 (1993); *State* v. *Falcon*, 26 Conn. App. 259, 267–68, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992); *State* v. *McNeil*, 21 Conn. App. 519, 524, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990); *State* v. *Aleksiewicz*, 20 Conn. App. 643, 651, 569 A.2d 567 (1990); *State* v. *Horne*, 19 Conn. App. 111, 144–46, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990). " 'It is axiomatic that this court is vested with the authority to remand a case for resentencing. See, e.g., *State* v. *Hanson*, 210 Conn 519, 556 A.2d 1007 (1989); *State* v. *Carpenter*, 19 Conn. App. 48, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). In doing so, however, it is not this court's function to prescribe the new sentence. *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 780, 617 A.2d 933 (1992); *State* v. *Schaeffer*, 5 Conn. App. 378, 390, 498 A.2d 134 (1985). The appropriate disposition is a remand to the trial court with direction to resentence the defendant.' *State* v. *Dennis*, 30 Conn. App. 416, 426, 621 A.2d 292, cert. denied, 226 Conn. 901, 625 A.2d 1376 (1993)." *State* v. *Jacobson*, supra, 805–806.

While it is clear that a conviction may not stand on the aggregate, it is equally clear that the jury could have found, as it in fact had to find, that sufficient evidence was presented to justify a determination that the defendant committed an attempted larceny in the

fourth degree in violation of General Statutes § 53a-125.[16] It is evident that the jury's verdict in the present case necessarily presupposes a threshold determination that all of the elements of attempted larceny in the fourth degree had been proven beyond a reasonable doubt, since it is a lesser included offense of attempted larceny in the third degree. In order for the jury to have determined that the value of the checks exceeded $1000 for the greater offense, it must have necessarily determined that the aggregate included the value of the check of $960, which exceeds the value of $500 for attempted larceny in the fourth degree.[17]

IV

The defendant's claim that the conviction of attempted larceny in the third degree, using the aggregation section of the larceny statute, together with the conviction of conspiracy to commit larceny in the third degree constitutes double jeopardy is founded largely on the fact that both offenses require the consideration of the acts of another person. Because we reverse the conviction of attempted larceny in the third degree and remand the matter with direction to render judgment of conviction of attempted larceny in the fourth

---

[16] General Statutes § 53a-125 (a) provides: "A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."

[17] We note that the defendant has not claimed on appeal that the trial court improperly instructed the jury in any regard. See State v. Falcon, 26 Conn. App. 259, 268, 600 A.2d 1364 (1991). The defendant requested that the court instruct on a lesser included offense of attempted larceny in the fourth degree. The trial court instructed as to larceny in the fourth degree as to the People's Bank incident and indicated that the instructions would not be repeated for the Gateway Bank incident. The court instructed that "the amount would indicate the degree of larceny," and that "greater than $1000, larceny in the third degree, greater than $500 but did not exceed $1000, larceny in the fourth degree." The defendant did note his exception to the charge indicating that it was not clear, and did raise as a claim for a new trial that the court failed to instruct on larceny in the fourth degree.

degree, which involves the conduct of only the defendant, the defendant's double jeopardy claim is no longer viable.

The judgment is reversed as to the charges of forgery in the third degree and attempted larceny in the third degree, and the case remanded with direction to render a judgment of acquittal on the charge of forgery in the third degree and of guilty of attempted larceny in the fourth degree in violation of General Statutes § 53a-125 (a), and to resentence the defendant in accordance therewith.

In this opinion FOTI, J., concurred.

LAVERY, J., dissenting. Although I concur with the rest of the majority opinion, I believe that our precedents require a trial court to conduct some minimal investigation where it appears that the jury may have been exposed to prejudicial extrinsic evidence. Therefore, I must respectfully dissent from part I (A) of the majority opinion.

It is well established that the trial court has broad discretion to determine whether jury misconduct occurred, and, if so, whether such misconduct prejudiced the defendant. *State* v. *Migliaro,* 28 Conn. App. 388, 395, 611 A.2d 422 (1992). It is equally well established that the court must have some factual basis on which to exercise that discretion. *State* v. *Gonzalez,* 25 Conn. App. 433, 439, 596 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992). "In exercising this discretion the trial court must zealously protect the rights of the accused." *State* v. *Cubano,* 203 Conn. 81, 89, 523 A.2d 495 (1987), quoting *Wainwright* v. *Witt,* 469 U.S. 412, 429–30, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985).

"Where it *appears* . . . that the jury panel *may* have been exposed to prejudicial extrinsic evidence, the

trial court *must* conduct an investigation . . . ." (Emphasis added.) *State* v. *Migliaro,* supra, 396; *State* v. *Harris,* 32 Conn. App. 831, 632 A.2d 50 (1993). The trial court can use whatever inquisitorial tools are necessary and appropriate to determine whether there was a reasonable possibility of prejudice. *State* v. *Migliaro,* supra. It is important, however, that "[a] basic factual inquiry into the substantive content of the alleged misconduct [be made] before the trial court [exercises] its discretion in determining the scope or extent of any investigation needed." Id., 397, quoting *State* v. *Gonzalez,* supra, 440. *"Where the trial court had the opportunity to observe jurors and to examine them at a posttrial hearing,* we will not question that court's findings absent a showing of clear error." (Emphasis added.) *State* v. *Leonard,* 31 Conn. App. 178, 195, 623 A.2d 1052, cert. granted on other grounds, 226 Conn. 912, 628 A.2d 985 (1993).

Here, the letter indicated that two potentially prejudicial statements may have been made in front of the jury. Two sheriffs bet that the defendant would be convicted because he was black and from New York. Another sheriff stated that one of the state's witnesses had to be coached with photographs. Although not signed, the letter accurately stated that the defendant was black, a New York resident and accused of cashing bad checks. Further, the letter correctly recited the uncommon first name of one of the jurors. These factual similarities increase the letter's reliability and reinforce the appearance that the jury may have been prejudicially exposed.

The majority posits that the statements made by the sheriff would aid the defendant by demonstrating the weakness of the state's case. Therefore, the majority concludes, the statements could never be prejudicial. This is, at best, conjecture. A reviewing court should

not speculate on the juror's exposure or the effect thereof. *Speed* v. *DiLibero,* 215 Conn. 308, 315, 575 A.2d 1021 (1990).

A review of the case law involving juror misconduct reveals only five cases in which the trial court failed to conduct some form of factual investigation. Three of the cases were affirmed on review. *State* v. *McCall,* 187 Conn. 73, 82, 444 A.2d 896 (1982) (investigation unnecessary as judge source of potential prejudicial exposure); *Hamill* v. *Neikind,* 171 Conn. 357, 360 n.4, 370 A.2d 959 (1976) (investigation superfluous where juror's posttrial comment to defense attorney so innocuous as not to risk new trial); *State* v. *Hobson,* 8 Conn. App. 13, 22–23, 511 A.2d 348, cert. denied, 201 Conn. 808, 515 A.2d 379 (1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 97 L. Ed. 2d 686 (1987) (no investigation required where misconduct internal to jury deliberations). In the two remaining cases, *State* v. *Migliaro,* supra, and *State* v. *Gonzalez,* supra, this court remanded the matters specifically because the trial court failed to investigate.

In *Gonzalez,* the case was remanded so the trial court could investigate the nature and effect of the possible exposure. In *Migliaro,* the trial court knew the nature and source but not the effect of the potentially prejudicial information on the jury. We required the trial court to conduct a hearing to determine the effect. Likewise, the letter in this case revealed the source and nature of the exposure. The trial court had no way of knowing, however, the effect of that exposure on the jury.

The case law does not require, nor do I suggest, that every allegation of jury misconduct requires a full evidentiary hearing. Although the threshold allegation of misconduct that would necessitate an investigation is low; *State* v. *Migliaro,* supra (investigation required

where it appears jury may have been exposed); the intensity of the investigation required is also low. Id. As we have often stated, the trial court can use whatever inquisitorial tools are necessary and appropriate. Thus, simply interviewing a juror in chambers is sufficient. See, e.g., *State* v. *Cubano,* supra; *State* v. *Sims,* 12 Conn. App. 239, 244, 530 A.2d 1069 (1987), cert. denied, 206 Conn. 801, 535 A.2d 1315 (1988); *State* v. *Grant,* 8 Conn. App. 158, 164, 511 A.2d 369 (1986). I believe that our precedents require trial courts to perform at least some minimal investigation before exercising their discretion.

The trial court received the letter prior to sentencing; thus, the judgment was not yet final. The letter created the appearance that the jury may have been prejudicially exposed. Therefore, the trial court was required to make some basic factual inquiry about possible misconduct. It did not. I would remand this case for a hearing.

Accordingly, I respectfully dissent from part I (A) of the majority opinion.