[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR NEW TRIAL
The defendant asks this court to invoke an extraordinary remedy by upsetting a verdict of guilty handed down by a jury of twelve in a murder case. This is a continuation of the saga of State v. Newsome, memorialized in the court's memorandum of October 14, 1993, ordering a hearing to secure juror testimony — which memorandum is attached hereto as Appendix A. The court held that hearing on two days during which the court conducted all the questioning pursuant to its well recognized authority to determine, in its broad discretion, how to pursue the inquiry. State v. Rodriguez, 210 Conn. 315, 326; State v. CT Page 2553 Savage, 161 Conn. 445, 450; State v. Brown, 33 Conn. App. 339,346; State v. Harris, 32 Conn. App. 831, 836; State v. Leonard,31 Conn. App. 178, 195, citing Speed v. Delibero, 215 Conn. 308,314; State v. Migliaro, 28 Conn. App. 388, 396, 426. See also, Remmer v. United States, 347 U.S. 227; U.S. v. Brassco,385 F. Sup. 966, 969; Neron v. Clemons, 662 F. Sup. 854, 862, rev'd. on other grounds, sub. nom., Neron v. Tierney, 841 F.2d 1197
(1st Cir. 1988). Because it took over the questioning, the court relieved the defendant of his normal procedural duty of proving prejudice. (This procedure, of course, also denied the state the ability to cross-examine.)[1] "[D]ue process does not require the court to permit counsel to examine or cross-examine the juror." U.S. v. Boylan, 698 F. Sup. 376, 386, footnote 9, quoting Neron v. Clemons, supra, at 862. The court did, however, allow the parties to pose questions through the court. See, U.S. v. Boylan, supra. Moreover, the court's initial questioning mirrored the written summaries of the defendant's investigator. There is at least a hint in the defendant's brief that this removes the question of prejudice from the case. That view confuses procedure with substance. As this opinion will reveal, it does not merit extensive discussion and falls of its own weight. Proof of prejudice is an integral part of this case. See Asherman v. State, 202 Conn. 429, 442, where proof of prejudice was held to be required in cases in which the court was not responsible for juror misconduct, thus distinguishing cases like Aillon v. State, 168 Conn. 541, 548, and State v. Washington, 182 Conn. 419, heavily relied on by the defendant. This court has not taken the question of prejudice lightly. It has made an extensive effort to determine whether it exists. The court carefully considered the parties' arguments; it listened to the jurors' testimony; it reviewed its notes of the jurors' testimony; it read the transcripts of that testimony; and it carefully reviewed the alleged misconduct. The court also went back to listen to the testimony of the original trial; it re-read its notes of that trial; and it made a thorough review of the case law and the legal literature covering this area. Nor has the court forgotten that this is a murder case. The rights of the defendant weigh heavily. So do those of the State of Connecticut and the victims. The court's inquiry was designed to do two things: 1) make abundantly sure that the defendant was not wrongly convicted by a jury which, by improper conduct, prejudiced his rights and therefore, his case; 2) make sure that the right of the state to a proper conviction is not prejudiced by a rush to judgment based on juror irregularity if, in fact, it had no effect on the regularity of that verdict. CT Page 2554
 I
IA
"A necessary component of the right to an impartial jury trial is the right to have the jury decide the case `solely on the basis of the evidence and arguments given them in the adversary arena after proper instructions on the law by the court.'" State v. Migliaro, 28 Conn. App. 388, 395 (1992), quoting State v. Rodriguez, 210 Conn. 315, 325 (1989). "[T]rial by jury in a criminal case necessarily implies at the very least that the `evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." State v. Asherman,193 Conn. 695, 739 (1984), quoting Turner v. Louisiana, 379 U.S. 466,472-73 (1965). Consideration of extrinsic evidence by the jury may, in some cases, be violative of a defendant's right to a trial by an impartial jury. State v. McCall, 187 Conn. 73, 80
(1982).
IB
Where it appears that the jury may have been exposed to prejudicial extrinsic evidence, the trial court should conduct an investigation to determine whether juror misconduct occurred. State v. Migliaro, supra, 396. The Appellate Court has made it clear that the "trial court enjoys broad discretion in determining whether jury misconduct occurred, and, if so, whether such misconduct prejudiced the defendant. . . ." State v. Brown, 33 Conn. App. 339, 344 (1993); State v. Harris, 32 Conn. App. 831,836 (1993). "[T]he proper procedure is for the court to conduct a hearing, formal or informal as the occasion may demand, in the presence of a court reporter, at which the facts can be established." State v. Savage, 161 Conn. 445, 450
(1971). "Where more than one juror is involved, it is preferable for the court to question them individually." Id. See also Remmer v. United States, 347 U.S. 227 (1954). "A juryman may testify to any facts bearing upon the question of the existence of any extraneous influence . . . and may also testify in denial or explanation of acts or declarations outside the jury room, where evidence of such acts has been given as ground for a new trial." (Citations and internal quotation marks omitted.) Miller v. United States, 403 F.2d 77, 83 n. 11 (2d CT Page 2555 Cir. 1968). The trial court addresses the credibility of witnesses and the weight to be accorded their testimony in resolving matters of potential jury misconduct. State v. Leonard, 31 Conn. App. 178, 195 (1993), citing Speed v. DeLibero, 215 Conn. 308, 314 (1990). Our Supreme Court and Appellate Court have reminded us that the "trial judge is in the best position and is uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material and its prejudicial nature." State v. Leonard, supra, 195 citing State v. Rodriguez, supra, 331.
While the trial judge "has wide discretion in deciding how to pursue an inquiry into the nature and effect of information that comes to a juror improperly as well as its potential effect upon the jury . . ."; State v. Rodriguez, supra, 326; "under State v. Asherman, . . . inquiry could not be made into the mental processes of the jurors, but could explore the use . . . and whether it played any part in the jury's decision." State v. Leonard, supra, 192-93. See also Miller v. United States, supra, 83 n. 11. "[T]he trial court is not concerned with mental processes of the jurors, but the nature and quantity of the misconduct." Williams v. Salamone, 192 Conn. 116, 122 n. 7 (1984), citing Aillon v. State, 168 Conn. 541, 550-51 (1975). "Where an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror." (Citations omitted.) Miller v. United States, supra, 83 n. 11. Likewise, where there are allegations that jurors may have considered extrinsic evidence, "[o]nce the trial court finds that consideration of extrinsic evidence occurred, the court must then determine whether the misconduct actually prejudiced the defendant." State v. Harris, supra, 836, citing Asherman v. State, 202 Conn. 429, 442 (1987). The relevant questions for the trial court are whether the misconduct is of such a nature that it probably rendered the juror unfair or partial; Williams v. Salamone, supra, 122; and whether the misconduct deprived the defendant of his right to a fair trial. State v. McCall, supra, 77, United States v. Klee,494 F.2d 394 (9th Cir. 1974).
IC
A claim of juror misconduct based upon allegations that jurors discussed a case prior to deliberation does not automatically require a new trial. State v. Washington,182 Conn. 419, 429 (1980). "The test is whether or not the CT Page 2556 misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, supra, 396. Where the trial court is in no way responsible for the alleged juror misconduct, the court must find that actual prejudice resulted from misconduct. Asherman v. State, supra 442. See also State v. Harris, supra, 835.
ID
Where the defendant, through his private investigator, was able to offer some showing on prior discussion or improper conduct as to any juror, (or there was any reason to believe the juror may have heard something) that juror was interrogated by the court. Jurors who, the investigator found, were not involved in such conduct and who did not hear of any such conduct, were not interrogated, in line with the court's policy of making the least possible incursion into the integrity and sanctity of the jury system, since no predicate existed for such an interrogation. Requiring "a satisfactory threshold showing of substantiality before invading the juror's privacy [does not] . . . offend the Constitution." Neron v. Tierney, 841 F.2d 1197,1200, 1205-6 (1st Cir. 1988).
"[E]vidence coming from counsel rather than from the juror is . . . hearsay." United States v. Nance, 502 F.2d 615, 621 (8th Cir. 1974). The unsigned summaries of interviews which were compiled after discussions with jurors by the defendant's investigator constitute inadmissible hearsay. Thus, the court, in conducting its investigation, only considered testimony elicited during the court's examination of the jurors.[2]
(Nevertheless, it did consider the investigator's testimony at the first hearing as it applied later to inconsistent statements on the part of jurors.)
The court inquired along the lines of our case law: (1) whether comments had been made by certain jurors prior to the commencement of deliberations; (2) whether those comments were in fact improper; (3) whether any jurors considered or viewed extrinsic evidence; (4) whether jurors had been exposed to either improper comments or extrinsic evidence; and (5) whether the defendant was prejudiced by improper comments or extrinsic evidence. See State v. Gonzalez, 25 Conn. App. 433,440.
II CT Page 2557
The defendant attacks with a shotgun rather than a rifle. The testimony of the jurors falls into five categories: (1) prejudgment of the defendant's guilt or innocence; (2) one juror's alleged visit to, and inspection of, the crime scene; (3) the credibility of the state's chief witness, Rodney Womble; (4) the appearance of witnesses in "jail clothes"; and (5) the physical appearance of a female witness.
PREJUDGMENT OF GUILT OR INNOCENCE
It is significant that every juror interviewed by the defendant's investigator and every juror interrogated by the court (including those who admitted they made comments) made it clear that there was no prejudgment of the defendant's guilt or innocence by any jurors. That much is unanimous, and the court finds it credible. Whatever was said, there is no evidence it compromised the jury in any way.
JUROR'S VISIT TO THE CRIME SCENE
Juror Kowaleski, who lived quite near the area in question, testified that on two or three routine trips to the Trumbull Mall, she took her usual shortest route, which brought her through the intersection that was the site of the shooting at issue in this case; that she did not stop and get out, but merely looked around as she passed through the area; and that she saw nothing that altered or affected her opinion about the case that was based on the evidence under oath. She did not tell any jurors that she drove past the scene, which other jurors corroborated.
The issue for the jury was not the physical scene. The issue was when Rodney Womble lied: in his police statement or in his testimony in court. As the juror herself stated, the incident could have taken place anywhere. The physical scene contributed nothing to what had to be determined by the jury. The juror did not go to the scene to get information, as alleged by the defendant. It is clear from the testimony that nothing that Ms. Kowaleski did affected the outcome of this case. No evidence supports the view urged on us by the defendant.
CREDIBILITY OF THE STATE'S CHIEF WITNESS
There was testimony that jurors' statements were made CT Page 2558 concerning one or more witnesses changing their testimony and lying. When pressed by the court, it was obvious that the testimony was really about Rodney Womble, the state's chief witness. Womble gave two entirely conflicting stories: one to the police who reduced it to a statement that he signed; and one in court particularly on cross-examination.[3] The state claimed at trial that Womble told the truth in his statement, but lied in court. The defense contended Womble lied in his statement but testified truthfully in court, particularly on cross-examination. Basic to the theory of both the state's case and the defense case, was the fact that Womble changed his testimony. Both sides conceded he was a liar. They differed on when he lied. Clearly, Womble lied either on cross-examination or he lied in his police statement — that much is not in question. Much of cross-examination was spent attempting to make a lie out of his statement to the police.
Any comments by jurors about Womble simply recognized the obvious and mirrored both the state's and the defendant's view of the case. Since both sides recognized Womble as a liar, it is fatuous to suggest that the recognition of that by one or more jurors somehow prejudiced the defendant. It clearly did not. Logic dictates that the jury ultimately had to base its verdict either on the facts revealed by Rodney Womble's statement to the police, or in his denial of the statement on cross-examination. Any juror discussion about Womble lying did no damage to the defendant since it was totally compatible with the presentation of both sides.
APPEARANCE OF WITNESSES IN JAIL CLOTHES
Rodney Womble and Jared Fleming were both in custody when they testified. Each was accompanied by a corrections officer. In fact, Womble testified on cross-examination that he was in custody and that he was returned to Connecticut to testify in this case. Comments about Womble's prison dress, therefore, had no affect whatsoever on this case.
Jared Fleming was called as a witness by the state, to whom he became increasingly hostile. Like Womble, he gave a statement to the police, and like Womble, his testimony was replete with contradictions when compared to his police statement. He made obvious testimonial departures from his earlier statement. Fleming had a fight with the victim before he was killed. Fleming testified on more than one occasion that CT Page 2559 he did not know who killed the victim, and at one point, claimed he had not heard anything about the shooting. He contributed nothing to the state's case. If he "had not testified, the trial record would have been substantially the same." State v. Francis, 228 Conn. 118, 126. The fact that Fleming was in prison clothes and that a juror may have commented about it, was of no consequence since his testimony neither added to, nor subtracted from, the case.
Moreover, Fleming was not a credible witness and only appeared interested in protecting himself. He neither helped nor hurt the defendant; he was not called by the defendant. If any juror comments about veracity were meant to include him, they were strictly de minimus and only stated the obvious without prejudicing the defendant.
APPEARANCE OF FEMALE WITNESS
Comments about the physical appearance of a female witness referred to Vanessa Fleming, Jared's mother. Like her son, she gave the police a story that varied in places from her testimony. Like her son, she was not a credible state's witness (she also had a significant number of larceny convictions); and like her son, she contributed little or nothing of value to the case, testifying that she did not know who shot the victim. Like her son, had she not testified, the record would not have been much different. She neither helped nor hurt the defendant. In fact, there was a significant disagreement between Vanessa and Jared Fleming in their testimony which compromised the testimony of both of them.
This was a one dimensional case. There is no question that it turned on when Womble was truthful and when he was lying. The physical appearance of Vanessa Fleming and what a juror may have said about that appearance could not have helped or hurt the defendant in any way. Her testimony was of no real significance. The court believes that the state proffered her testimony and that of her son only to avoid a Secondino charge. See, Secondino v. New Haven Gas Co., 147 Conn. 672, 674-76.
With the various factors listed above, the defendant could conceivably argue that while no single factor is sufficient to make a difference, the aggregation of all these factors gives them a legal vitality that they do not have individually. CT Page 2560
The defendant seeks to gain advantage from a conflict in testimony between jurors Powell and Noehren, and the testimony of jurors Towers and Benton. The court does not agree with the defendant's assessment of credibility. The fact that some jurors did not agree was not unusual. Some jurors had some difficulty remembering what happened. Moreover, there was no reason for them to remember, since the actions complained of were obviously of little concern to them. The defense wants the court to see sinister motives on the part of jurors. The court finds none. Sixteen jurors were packed into a small jury room for a number of days. The noise could undoubtedly get intense, and it is doubtful all jurors were able to hear everything. Undoubtedly, some read. Some chatted. Few had reason to be interested in what must have been many idle conversations. Furthermore, the fact of testimonial conflict does not establish the blatant misconduct and prejudice the defendant seeks. The court looked in vain for positive testimony given under oath which supports the defendant's position. A mere conflict in testimony fails to supply the positive evidence of prejudice needed for a new trial. Even if a witness is discredited, that does not establish the opposite of the witness' testimony. Positive evidence is required.
If this court exercised its discretion and ordered a new trial, it would do so in a virtual evidential vacuum — where speculation replaces fact finding, and without concrete support for the defendant's complaints. Any argument that there was prejudice "resides wholly in the realm of speculation and does not substantiate a claim of prejudice." State v. Harris,32 Conn. App. 476, 482. The defendant's complaints lack a solid factual basis. See State v. Migliaro, supra, 395. "Evidence that may first appear . . . quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory." State v. Shannon, 212 Conn. 387, 400; State v. Harris, 32 Conn. App. 476,482. The court simply cannot act as the defendant requests without a more solid factual predicate.[4]
Our Supreme Court has rejected the idea that a group of claims of error, none of which is legally viable, can be aggregated to form another claim of error. State v. Tillman,220 Conn. 487, 505; see also State v. Riddick, 33 Conn. App. 311,338. The idea that the sum of the parts is greater than the whole is untenable and ultimately depends on sophistry for its appeal. Zero plus zero is still zero. CT Page 2561
In finding the correct solution to this case, it is highly important to get the flavor of the case as it unfolded at trial. Accordingly, the court returned to listen to the tapes of the trial to determine whether its impressions of the jury were correct. It was also important to be sure of what could and what could not affect the verdict. The court took our Supreme Court's teaching seriously and wanted to be in a position to justify the confidence that court expressed in State v. Weinberg, 215 Conn. 231, 249, when it made plain that the trial court, with its firsthand impression of the jury is "in the best position to evaluate . . . whether the . . . jurors' exposure to improper matter has prejudiced [the] defendant . . ." State v. Weinberg, supra.
Since the case turned solely on when Womble lied, his statement assumed great importance. Bearing sufficient indicia of reliability, it came in as a Whelan statement. See State v. Whelan, 200 Conn. 743, 750. The defense appears to feel it is improper to convict a defendant of murder solely on a Whelan statement. But that is not our law, nor should it be. The existence of a full and broad cross-examination is the best weapon available to protect a defendant and that was granted to this defendant. Moreover, "if from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are nonetheless deciding from what they see and hear of that person and in court." State v. Buster, 224 Conn. 546, 557, quoting State v. Whelan, supra, in turn, quoting DiCarlo v. U.S., 6 F.2d 364, 368 (2d Cir.). "Moreover, prior statements are necessarily made closer to the event in question, when memories are fresher and when there is less likelihood that the statement is the product of corruption, false suggestion, intimidation or appeals to sympathy." State v. Buster, Id at 557-8.
Most jurisdictions and most commentators are in agreement.
It appeared to the court originally and again on reheating the tapes that there was one clear and cogent moment of truth in Womble's testimony. As a witness he was not helpful to the state on direct examination, and the state ultimately offered his statement On cross-examination, defense counsel used a clever trial strategy — feeding Womble the answers in what were sometimes somewhat long questions and allowing him to answer only "yes" or "no." When counsel's extensive cross-examination CT Page 2562 ended, the state questioned him again on redirect. It was then that the state cut him loose and allowed him to answer questions with more than "yes" or "no." At that time, Womble rather remarkably returned to the information he gave the police and stated categorically that Newsome was, in fact, present at the time and place in question. The court is satisfied that the jury was as impressed as the court with the way he blurted out information he had denied on cross-examination. It was the first time Womble sounded truthful, a fact the court observes, that was obviously not lost on the jury. It was a rare moment — the kind which has the potential to turn a trial around. It came against a background of silence on the part of the many witnesses who were at the scene. The upshot is that the Whelan statement alone, did not cause the defendant's conviction. Freed from the restrictions of a long cross-examination, Womble reverted almost automatically to the truth, before he had a chance to think about it. It was highly damaging to the defendant.
Against this background it is clear that the allegations of juror comments played no role whatsoever in the jury's decision and did not prejudice the defendant. His only harm came from the one witness originally willing to come forward — Rodney Womble. Indeed, this case provides a proper testimonial to the Supreme Court's decision to allow prior inconsistent statements for substantive purposes in Whelan.
This court finds that Mr. Newsome received a fair trial, unencumbered by any prejudice from juror comments.
The law recognizes that jurors are human. Our state and federal supreme courts have both noted that "the Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." State v. Weinberg, 215 Conn. 231, 249, quoting Rushen v. Spain, 464 U.S. 114,118. "In the vast majority of cases, therefore, the determination of whether the defendant has been deprived of his right to an impartial jury will depend upon how the jury interprets and unexpectedly will react to the communication made." State v. Weinberg, supra. "The important thing is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury." U.S. v. Klee, 494 F.2d 394, 396 (9th Cir.). CT Page 2563
It is worth restating the obvious. The conversations complained of here were not a product of external influences. They were comments made by a few individual jurors. There was little or no discussion surrounding them. Most jurors were not part of any discussion. There is every indication that none of them in any way prejudiced this defendant, since most of them had nothing to do with the issue upon which this case turned. Any comment about Womble merely repeated what both counsel contended in the assertion of their trial strategies. The jury clearly saw the case the way both counsel wanted them to; they recognized that counsel were correct that Womble was a liar. No reasonable juror could have been influenced by any juror comments, including the jurors who made them. This court believes the jurors did not prejudge the question of guilt or innocence, and that the defendant received a fair trial.
Moreover, the alleged trip to the scene, was not a trip to the scene at all. The juror merely passed through the intersection two or three times without stopping. It played no role in the conviction and was clearly harmless beyond a reasonable doubt. See, Commonwealth v. Jones, 448 N.E.2d 400,402 (Mass.App.Ct. 1992); (views of scene not prejudicial). The issue to be decided (when Womble lied) had nothing to do with the physical scene. It could have taken place anywhere. The juror herself stated it did not matter where it happened. Once the jury decided Womble was truthful in his police statement and on redirect examination, that clearly implicated the defendant as the killer. No reasonable juror could have been influenced by the two or three trips past the intersection that were not communicated to him. The driver made clear that it did not influence her in any way. If it had, she undoubtedly would have talked about it, which she did not do.
 III
There is no demonstration that any juror comments, or the juror's car rides, invoke the defendant's constitutional rights. No constitutional rights are implicated here. The court is satisfied that the defendant's crucial Sixth Amendment rights to confrontation were more than adequately protected when the court permitted defense counsel the right to a far-reaching cross-examination.
In each situation alleged, the court finds that none of the CT Page 2564 juror comments prejudiced the defendant. Objectively, none of the allegations could have reasonably affected the outcome of the jury deliberations. Therefore, in the absence of any prejudice, the court finds none of the defendant's basic rights implicated. Even if the court were to find that the juror actions did invoke constitutional rights, however, the court is abundantly satisfied that the conduct complained of was harmless beyond a reasonable doubt.
One of the serious problems with the inquiry undertaken here is the imposition on and harassment of a jury which has worked hard, supposedly in secret, to do the difficult job of determining guilt or innocence. Miller v. U.S., supra, 81. The court sensed that a number of jurors were disturbed by being called back into court. Since the court finds no wrongdoing, the court understands why one juror used an off-color expression to describe the defendant's attempt to second-guess them and overturn their verdict. The court is mindful that we stand on a threshold of possibly undermining our long held policy of finality. See Tanner v. U.S., 483 U.S. 107, 120,107 S.Ct. 2739, 2748, 97 L.Ed.2d 90. The strain on our system would be unbearable if virtually every convicted defendant decided to send an investigator to interview the convicting jurors based merely on unsubstantiated statements of the convicted defendant's family. Some federal courts have refused to allow this without permission from the trial court.[5] See Miller v. U.S., supra. So have the New Jersey courts. The court feels we should do the same.
The court is similarly concerned with the assault on the integrity of the jury system and its sanctity of jury silence that contributes so heavily to making the jury system acceptable to the public. Every inquiry into jury deliberations is a potential incursion which may damage that system. The system should not be assaulted in the absence of good cause to do so. In Neron v. Tierney, 841 F.2d 1197, 1204, the 1st Circuit observed that the "`interest in insulating the jury's deliberative process' is a weighty one. Tanner v. U.S., ___ U.S. ___, 107 S.Ct. 2739, 2747, 97 L.Ed.2d 90 (1987). A court must not allow jurors to be `harassed and beset by the defeated party in an effort to secure . . . evidence of facts which might establish misconduct.' Id. (quoting McDonald v. Pless, 238 U.S. 264,267-68 . . .) `It is not at all clear . . . that the jury system could survive such efforts to perfect it.' Id." CT Page 2565
In State v. Brown, the appellate court held that whether juror consideration of extrinsic information is prejudicial depends on the magnitude of the juror deviation from a proper role, the degree to which the accused was deprived of his rights, and the likelihood that an impropriety affected the jury's verdict. State v. Brown, 33 Conn. App. 339, 344. The jury's consideration of the critical issues was not affected. The defendant's rights were not affected. The jury verdict was not affected.
For the reasons discussed, the defendant's motion for a new trial is denied.
SAMUEL S. FREEDMAN, J.
APPENDIX A
MEMORANDUM ON MOTION FOR NEW TRIAL
FREEDMAN, J.
The plaintiff moves for a new trial, alleging that: (a) jurors discussed the case before deliberations; (b) one juror went to the scene of the shooting alleged in this case.
At a hearing before the court, the defendant produced evidence gathered by a private investigator from interviews with jurors.
 I
Connecticut law provides for juror testimony in limited CT Page 2567 situations such as the contact of a juror with extraneous facts, such as that alleged here. State v. Migliaro, 28 Conn. App. 388; State v. Gonzalez, 25 Conn. App. 433, 440.
Therefore, because of evidence produced at a hearing by the defendant, the court will hear the testimony of jurors Stephanie Kowalewski, Shelly Towers (alternate), Donald Wales, Barry Powell, Donnie Langley and Beverly Noehren.
Questioning of all jurors will be conducted by the court.
 II
Regarding counsel's use of confidential juror questionnaires, the court notes that section 51-232(c)(3), General Statutes, states in pertinent part:
 ". . . Counsel shall be required to return such copies to the clerk . . . upon completion of the voire dire. Except for disclosure made during voire dire or unless the court orders otherwise (emphasis added) information inserted by jurors shall be held in confidence . . . Such . . . questionnaires shall not constitute a public record."
The court, after hearing evidence, believes that defense counsel's action in using juror questionnaires post-trial, for out of court purposes not sanctioned by the statute (i.e., sending an investigator to interview jurors who sat, and deliberated, in this case) without first securing the approval of the court, is not in accord with the spirit, if not the language of section 51-232 (c)(3), General Statutes.
Accordingly, the court orders that any future use of those forms, or any information gained from them — as well as any further contact with any member of the jury or alternates who sat in this case — shall be permitted only with the prior approval of the court, and shall be subject to any conditions set forth by the court.
While in the absence of state rules, the court does not suggest misconduct on the part of counsel, the court does question the wisdom of proceeding without court approval, to have a private investigator question jurors after trial. The CT Page 2568 reasons should be patently obvious and are well documented. Among other problems, approval of such acts sets a precedent that invites every losing defendant to investigate the jury that convicted him, even in the absence of any evidence of juror misconduct. The public policy of this state will not permit this.
Since the Superior Court has not yet adopted formal rules for contacting jurors, when good cause exists for that action, the court adopts federal practice regarding post-trial inquiries of jurors.
The parties may not conduct any further inquiries of jurors without permission of the court.
The second circuit has held that ". . . to insure that jurors are protected from harassment a district judge has the power, and sometimes the duty, to order that all post-trial investigation of jurors shall be under his supervision." United States v. Moten, 582 F.2d 654, [582 F.2d 654]; Miller v. United States,403 F.2d 77, [403 F.2d 77], 81-2. Finding the use of a private investigator to be conduct it cannot approve, a federal court has held that "all post-trial questioning of jurors must only be conducted under the strict supervision and control of the court, with the inquiry restricted to those matters found by the court to be relevant and proper." United States v. Brasco, 385 F. Sup. 966, 969. This court adopts both the logic and the rule of Brasco.
The federal courts have, with painstaking care, spelled out the critical need for the restrictive rule they have adopted. The logic is compelling. There is no doubt that besides the not inconsequential danger inherent in an assault on the finality of decisions, the consequences of unregulated questioning, such as occurred here, can badly damage the sanctity and vitality of the jury system. In this last bastion of the voire dire, we too often see counsel who continue to put jurors "on trial," treating them like defendants, a practice which heavily contributes to the bad name often given to our courts and our justice system. It is important to avoid further damage to that system which is, after all, one of the cornerstones of democratic government. If evidence from jurors is required it should be obtained by a court appointed officer or "special master" (preferably a commissioner of the Superior Court), subject to the instructions of that court. Counsel's duty to a client is, in this setting, better carried out under court CT Page 2569 approval and supervision.
The court will take steps to summon the six jurors mentioned above, giving them reasonable and adequate notice that they must attend a hearing of this court on Friday, October 29, 1993, at 10 o'clock A.M.
S. FREEDMAN, J.