STATE OF CONNECTICUT *v.* JOSE J. GONZALEZ
(9056)

FOTI, LAVERY and HEIMAN, Js.

434

Argued May 1—decision released August 13, 1991

*Deborah L. Del Prete,* deputy assistant public defender, with whom were *Richard Emanuel,* assistant public defender, and, on the brief, *G. Douglas Nash,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), carrying a pistol on his person without a permit in violation of General Statutes §§ 29-35 and 29-37 (b), and possessing a weapon in a motor vehicle in violation of General Statutes § 29-38.[1]

---

[1] The defendant was acquitted of a fourth count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).

On appeal, the defendant challenges the trial court's (1) failure to investigate or inquire into an allegation of possible jury misconduct, (2) charge to the jury on the elements of the crime of attempt and (3) denial of the defendant's motion for judgment of acquittal claiming that the evidence was insufficient to support the convictions.

The jury could reasonably have found the following facts. At approximately 8 p.m. on August 20, 1988, the victim was driving north on Interstate 95 into Bridgeport. He exited Interstate 95 at the connector, exit 27a, and was driving around a bend on the one lane ramp when he came upon the defendant's automobile. The ramp branched into two lanes, but the defendant drove his car down the middle of the roadway. As soon as the defendant's car moved far enough to the left, the victim passed it on the right. As he was passing, he noticed that both the defendant and the defendant's female passenger seemed upset. The victim exited the connector at exit 2, which he followed onto Golden Hill Street, where he stopped at a traffic light. While he was stopped at the light, the defendant, who had followed him off the connector, pulled his car around the victim's and parked at an angle in front of it. The defendant got out of his car carrying a set of handcuffs and approached the victim, who had gotten out of his car. The defendant threatened the victim, who, because of the handcuffs, believed that the defendant was a police officer. The defendant accused the victim of cutting him off and the victim insisted that he could not have cut the defendant off because he had been driving behind him.

During the argument, a woman got out of the defendant's car carrying a stick, and approached the two men. When the victim asked the woman if she was going to hit him with the stick, she began to swing it, but the

victim managed to block her arm and avoid the blow. The woman retaliated by scratching his face and he grabbed her wrist. At this point, the victim blacked out. His next recollection was that the defendant had said "come on" to the woman and they both got into the defendant's car and drove away. The victim had been shot in the throat with a .25 caliber bullet and blood was coming out of his mouth. The bullet had entered his neck under his chin and lodged behind his left ear. He was hospitalized for two to four days and suffered a permanent loss of feeling in the left side of his neck.

The victim was unarmed during the argument, and he held both of the woman's arms, so she could not have shot him. He was shot from point blank range, and, although he did not see who had shot him, the only other person outside of the car was the defendant.

A taxi driver witnessed this incident. He had been sitting in his cab ten to twenty-five feet from the two men when they began to push each other. The witness observed one of the men pull out a pistol and lunge at the other man. He heard a gunshot and saw one of the men fall into the bushes, and the other speed away in a car accompanied by a woman who was holding a stick.

I

The defendant first claims that his state and federal constitutional rights[2] were violated when the trial court failed to investigate an allegation of juror misconduct.

The following additional facts are relevant to this claim. The jury was instructed on October 19, 1989, and deliberations commenced at noon. Sometime after the

---

[2] The defendant alleges deprivation of his right to a fair and impartial jury trial, and the right to due process and equal protection of the law pursuant to the fifth, sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 20 of the Connecticut constitution.

luncheon recess, the jurors requested to rehear some of the testimony. At 4:07 p.m. the jury requested and received reinstruction on the definition of attempted murder. Deliberation continued until 5 p.m. at which time the jury was discharged for the evening. On the next morning, October 20, 1989, a juror passed a note to the clerk, that read: "Your Honor, something was said by [another juror] that may have prejudiced the jury. May I speak to you about it?"

The jury commenced deliberations at 10 a.m. At 11:10 a.m., when the defendant arrived at court after having been delayed, the court reconvened. Prior to this, at about 10:15 a.m., the court advised counsel of the juror's note and indicated that its response would be "No." Prior to the court's reconvening, the jury indicated by a note that a verdict had been reached.

In the absence of the jury, the court indicated to counsel that the jury would be brought out, the juror's note would be answered, and then "I will ask them to return to the jury room just for the sake of having an opportunity to have their own deliberations in respect to . . . my answer to their question. And if they have [nothing] further and wish to return a verdict, they may knock on the door and we are ready to accept same. But I will give them an opportunity. I will not have colloquoy here in the courtroom with the panel. So that's what I'm going to do. You may take your exceptions following that."

The jury returned and the court stated: "Ladies and gentlemen of the panel, I haven't been able to respond to the first question that you have placed to me by a member, which is now the court's exhibit four, due to circumstances beyond my control.

"I am now going to answer that question. I will read it for the record so you'll know it because it is a com-

munication from the jury. And I will give you my answer to it. When I give you my answer to it, I will allow you to step out.

"If you have any further deliberations in regard to that answer, you may do so. You may not, and if you do not because you've indicated by your recent note that you are ready to return a verdict, then you may merely knock on the door, come back out and we are ready to accept your verdict. But I don't have colloquoy here. So if you want to discuss jury business, you do it in there. If you do not, you at least have the opportunity and then you come back out. Okay.

"The question was, 'Something was said by [a juror] that may have prejudiced the jury. May I speak to you about it?'

"And the answer to that question, given by [the inquiring juror], is no, you may not.

"So if you'd like to go out and if there's any further discussion, you merely knock on the door and we'll accept your verdict."

The jury returned to the jury room and both the state and the defendant took exceptions. The state excepted on the ground that "the court should answer the question either by asking that particular juror what it was or asking the foreperson of the jury to write a question as to what the problem was. In that way, Your Honor would have a chance to cure any potential juror misconduct." The state also claimed that neither it nor the defense would have any redress unless the court acted at that time.

Following the jury's verdict the court, sua sponte, polled the jury.[3] Each individual juror agreed to the verdict, and the six jurors were thereafter excused.

---

[3] There were neither objections taken, nor exceptions noted.

It is fundamental under both our federal and state constitutions that any person charged with a criminal offense is entitled to be tried by a jury of his peers. Such a right implicates "a fair trial by a panel of impartial, indifferent jurors." *State* v. *Sims,* 12 Conn. App. 239, 245, 530 A.2d 1069, cert. denied, 206 Conn. 801, 535 A.2d 1315 (1987). Although not every instance of juror misconduct requires a new trial; *Williams* v. *Salamone,* 192 Conn. 116, 122, 470 A.2d 694 (1984); if "an accused makes a plausible claim that his constitutional right to a fair trial may be violated because the jury is not impartial, the burden is upon the state to rebut the presumption of prejudice that denies a fair trial." *State* v. *Rodriguez,* 210 Conn. 315, 326, 554 A.2d 1080 (1989).

The trial court is allowed wide discretion in deciding mistrial motions; *Speed* v. *DeLibero,* 215 Conn. 308, 315, 575 A.2d 1021 (1990); a denial of such a motion will be reversed only where it can fairly be said that the court abused its discretion; *State* v. *Rodriguez,* supra, 326. "A trial judge is generally in the best position to evaluate the critical question of whether the juror's or jurors' exposure to improper matter has prejudiced a defendant." Id.

Although it is true that "[t]he trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome"; *State* v. *Bausman,* 162 Conn. 308, 312, 294 A.2d 312 (1972); the trial court must have some factual basis upon which it may exercise that discretion. See *State* v. *Asherman,* 193 Conn. 695, 736, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). In order to determine whether the defendant has been deprived of his right to an impartial jury, the trial court must first determine what, if anything, was said, and if necessary, how the

jury interpreted and reacted to the communication made. *State* v. *Weinberg,* 215 Conn. 231, 249, 575 A.2d 1003, cert. denied,    U.S.   , 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

Here, we have one juror's allegation of possible misconduct by a second juror. The record is too barren, however, to determine what misconduct, if any, took place and whether it was prejudicial. We cannot speculate whether there was some extraneous influence involved, or intimidation or harassment that may have affected the jury's verdict. Nor may we speculate that there was no misconduct, or if such did exist that it probably was not prejudicial, or fanciful or frivolous. A basic factual inquiry into the substantive content of the alleged misconduct was required before the trial court could exercise its discretion in determining the scope or extent of any investigation needed.

We, must, therefore, remand this case to the trial court for a hearing to determine (1) what comment has been made, (2) which juror or jurors had been exposed to it, (3) whether the comment was improper, and (4) whether the defendant had been prejudiced by it. If the trial court determines either that juror misconduct did not occur, or that any misconduct that did occur did not prejudice the defendant by depriving him of his right to a fair trial, the judgment is affirmed. If, on the other hand, juror misconduct is found that impinged on the defendant's right to an impartial jury, then the judgment is set aside and a new trial ordered.

## II

The defendant's second claim is that the trial court improperly instructed the jury on a statutory theory of attempt liability for which there was no evidentiary support. The trial court originally instructed the jury on the two forms of criminal attempt provided in Gen-

eral Statutes § 53a-49 (a) (1) and (a) (2), but subsequently removed subdivision (a) (2) from consideration in a supplemental instruction. The defendant claims that by instructing the jury on only subdivision (a) (1), the trial court limited its charge to a statutory alternative for which there was no evidentiary support.[4]

The long form information did not cite either subdivision of § 53a-49[5] for the first count of attempted murder. The court instructed on the application of both subdivisions indicating that no distinction had been made. During jury deliberations, the jury requested to be reinstructed on the definition of attempted murder. The court began its supplemental instructions on attempted murder by giving the statutory definition of murder and by explaining the element of intent. The court then discussed the specific element of attempt liability as set forth in § 53a-49 (a) (1). When the court began its discussion of subdivision (a) (2) of § 53a-49, the following colloquy took place: "The Court: This second part of the attempt statute provides that a person is guilty of attempting to commit a crime if, acting with the kind of mental state required for the commission of the crime, he intentionally does or omits to do any-

---

[4] Although the defendant neither filed a request to charge nor took exception to the charge or supplemental charge, we will review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the claim is one which goes to the improper instruction of an element of the crime, and the record is sufficient for such a review. *State* v. *Allen,* 216 Conn. 367, 376, 529 A.2d 1066 (1990); *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987).

[5] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

thing which, under the circumstances as he believed them to be, is an act or omission constituting a substantial step in the course of conduct planned to culminate in his commission of the crime.

"It's charged that way. But I don't think that section applies very well. It has to do with a plan, carrying out, steps.

"Assistant State's Attorney: I'm satisfied.

"The Court: I think if you just limit your consideration to the first part as I've given it to you, you'll have to determine whether the state has met its obligation there. The distinction is that, in this section, it's talking about an act or omission in carrying out a plan to culminate in the commission of the crime of murder. This has more to do with those individual, itemized factors which I have given to you previously. And I think if you look at them, you would disregard them as being in this case. That's lying in wait, enticing. That's not in this case.

"The question here is whether—if this gentleman was at the scene and was involved in the conflict, your question is whether or not he, at that moment, was armed. Knowing that he was and that he knowingly and intentionally pulled out a gun and shot the victim with the intent to take the victim's life, the fact that it wasn't accomplished is the basis of the attempt to commit murder. Okay? You may resume."

Although the defendant did not object to the supplemental charge that eliminated subdivision (a) (2) from the jury deliberations, he claims on appeal that his rights were violated by the court's charge on an offense for which there was no evidentiary foundation. Essentially, he argues that there was insufficient evidence to sustain a conviction on attempt as limited by subdivision (a) (1) of § 53a-49. He does not claim that

the charge as given was deficient, but rather that subdivision (a) (1) deals with a theory of culpability wherein the conduct that would have constituted the crime of murder did not occur because of the mistake of fact, and that there was absolutely no evidence to prove a violation of this subdivision. The defendant argues that the only relevant subdivision was (a) (2) which the jury was told to disregard. We do not agree.

The evidence was sufficient for the jury to find that the defendant pulled a gun and shot the victim in the neck with the intent[6] to take the victim's life, and that the defendant believed that shooting the victim in the neck would result in his death. We conclude that the cumulative effect of the evidence was sufficient to establish guilt beyond a reasonable doubt under the count charged, and that the jury was properly charged under § 53a-49 (a) (1).

## III

The defendant's last claim is that the evidence was insufficient to establish his guilt of the crimes charged.

A claim of insufficiency of the evidence requires us to determine, viewing the evidence presented in the light most favorable to sustaining the verdict, whether the jury here could reasonably have concluded, on the basis of the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Allen,* 216 Conn. 367, 380, 579 A.2d 1066 (1990); *State* v. *Ober,* 24 Conn. App. 347, 351, 588 A.2d 1080 (1991).

There is no merit to the defendant's claim as to the insufficiency of evidence to establish the defendant's

---

[6] The defendant does not raise on appeal a claim of lack of evidence sufficient for the jury to have concluded that the defendant did not possess the requisite intent.

guilt of the crime of attempted murder pursuant to General Statutes §§ 53a-49 (a) (1) and 53a-54a, as previously discussed in part II.

The defendant claims that the evidence was insufficient to establish his guilt of the charge of carrying a pistol without a permit because the state could not establish the barrel length of the pistol to be less than twelve inches, no weapon having been seized or even seen. We do not agree.

General Statutes § 29-35 prohibits the carrying of a pistol or revolver on one's person without a permit, except in one's dwelling house or place of business. For purposes of this section, the term pistol and the term revolver mean any firearm having a barrel less than twelve inches in length. General Statutes § 29-27.

Although the victim did not see the gun, a bullet was taken from his neck and a bullet shell casing was found at the scene on the evening of the shooting. The bullet was .25 caliber and could have been loaded into the cartridge that was found at the scene. An eyewitness saw the defendant reach into his back pocket, pull out a pistol and lunge at the victim. Although he could not see the weapon, he did see an object that was covered by the defendant's hand and that he concluded was a smaller caliber gun. A .25 caliber weapon is a small handgun, capable of being covered by a person's hand, that does not have a barrel length greater than twelve inches. The inferences reasonably drawn from those facts are sufficient to have allowed the jury reasonably to have concluded that the defendant was in possession of a firearm with a barrel of less than twelve inches in length.

The defendant also claims that the evidence was insufficient to establish that he was guilty of the crime of having a weapon in a motor vehicle in that the state failed to prove that the defendant knowingly possessed a firearm with a barrel of less than twelve inches in

a vehicle, or that no one in the vehicle had a proper permit to possess or carry such a weapon.

We have previously discussed the issue of the firearm's barrel length and, obviously, if the jury concluded that the defendant possessed that weapon, then he possessed it in the vehicle as well as outside of the vehicle.

General Statutes § 29-38 prohibits a person from knowingly having in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided for in §§ 29-38 or 53-206, or has not registered such weapon as required by § 53-202. Included as a weapon is any pistol or revolver as defined by General Statutes § 29-27.

The defendant concedes that the state presented evidence that neither the defendant nor his wife had a permit, but that the state failed to establish that neither of the other two occupants of the vehicle possessed a valid permit. The other two occupants were the minor children ages ten and thirteen. The defendant argues that the statutes, §§ 29-28 and 29-28a, speak of "any person" and presumably covers both adults and minors.

Although we do not set aside our common sense in reviewing this claim, we find it unnecessary to distinguish "minor" and "any person" because the evidence clearly showed that it was the defendant who possessed the gun when he emerged from the car. He, therefore, possessed the gun inside and outside of the vehicle. There was no evidence that anyone other than the defendant possessed the weapon within the car. Therefore, whether the other two "occupants" possessed a permit is immaterial.

The case is remanded to the trial court to determine whether jury misconduct has occurred. If the trial court finds that jury misconduct has occurred and that such misconduct was prejudicial to the rights of the defendant then the judgment is set aside and the matter is

remanded for a new trial. If the court finds that no jury misconduct has occurred, or, that any such misconduct was not prejudicial to the defendant's rights, then the judgment is affirmed. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.