[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON MOTION FOR NEW TRIAL
The plaintiff moves for a new trial, alleging that: (a) CT Page 8390 jurors discussed the case before deliberations; (b) one juror went to the scene of the shooting alleged in this case.
At a hearing before the court, the defendant produced evidence gathered by a private investigator from interviews with jurors.
Connecticut law provides for juror testimony in limited situations such as the contact of a juror with extraneous facts, such as that alleged here. State v. Migliaro, 28 Conn. App. 388; State v. Gonzalez, 25 Conn. App. 433, 440.
Therefore, because of evidence produced at a hearing by the defendant, the court will hear the testimony of jurors Stephanie Kowalewski, Shelly Towers (alternate), Donald Wales, Barry Powell, Donnie Langley and Beverly Noehren.
Questioning of all jurors will be conducted by the court.
 II
Regarding counsel's use of confidential juror questionnaires, the court notes that section 51-232(c)(3), General Statutes, states in pertinent part:
 ". . . Counsel shall be required to return such copies to the clerk . . . upon completion of the voire dire. Except for disclosure made during voire dire or unless the court orders otherwise (emphasis added) information inserted by jurors shall be held in confidence . . . Such . . . questionnaires shall not constitute a public record."
The court, after hearing evidence, believes that defense counsel's action in using juror questionnaires post-trial, for out of court purposes not sanctioned by the statute (i.e., sending an investigator to interview jurors who sat, and deliberated, in this case) without first securing the approval of the court, is not in accord with the spirit, if not the language of section 51-232(c)(3), General Statutes.
Accordingly, the court orders that any future use of those forms, or any information gained from them — as well as any further contact with any member of the jury or alternates who CT Page 8391 sat in this case — shall be permitted only with the prior approval of the court, and shall be subject to any conditions set forth by the court.
While in the absence of state rules, the court does not suggest misconduct on the part of counsel, the court does question the wisdom of proceeding without court approval, to have a private investigator question jurors after trial. The reasons should be patently obvious and are well documented. Among other problems, approval of such acts sets a precedent that invites every losing defendant to investigate the jury that convicted him, even in the absence of any evidence of juror misconduct. The public policy of this state will not permit this.
Since the Superior Court has not yet adopted formal rules for contacting jurors, when good cause exists for that action, the court adopts federal practice regarding post-trial inquiries of jurors.
The parties may not conduct any further inquiries of jurors without permission of the court.
The second circuit has held that ". . . to insure that jurors are protected from harassment a district judge has the power, and sometimes the duty, to order that all post-trial investigation of jurors shall be under his supervision." United States v. Moten, 582 F.2d 654, [582 F.2d 654]; Miller v. United States, 403 F.2d 77. [403 F.2d 77], 81-2. Finding the use of a private investigator to be conduct it cannot approve, a federal court has held that "all Post-trial questioning of jurors must only be conducted under the strict supervision and control of the court, with the inquiry restricted to those matters found by the court to be relevant and proper." United States v. Brasco, 385 F. Sup. 966, 969. This court adopts both the logic and the rule of Brasco.
The federal courts have, with painstaking care, spelled out the critical need for the restrictive rule they have adopted. The logic is compelling. There is no doubt that besides the not inconsequential danger inherent in an assault on the finality of decisions, the consequences of unregulated questioning, such as occurred here, can badly damage the sanctity and vitality of the jury system. In this last bastion of the voire dire, we too often see counsel who continue to put jurors "on trial," treating them like defendants, a practice which heavily CT Page 8392 contributes to the bad name often given to our courts and our justice system. It is important to avoid further damage to that system which is, after all, one of the -cornerstones of democratic government. If evidence from jurors is required it should be obtained by a court appointed officer or "special master" (preferably a commissioner of the Superior Court), subject to the instructions of that court. Counsel's duty to a client is, in this setting, better carried out under court approval and supervision.
The court will take steps to summon the six jurors mentioned above, giving them reasonable and adequate notice that they must attend a hearing of this court on Friday, October 29, 1993, at 10 o'clock A.M.
S. FREEDMAN, J.