STATE OF CONNECTICUT *v.* VERNON SHANKS
(11633)

LANDAU, FREEDMAN and SCHALLER, Js.

104

Argued November 1, 1993—decision released April 12, 1994

*Brian J. Kornbrath,* with whom were *Lisa M. Sosa,* certified legal intern, and, on the brief, *Timothy H. Everett* and *Julie E. Daniele,* certified legal intern, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Vernon Shanks, appeals from the judgment of conviction,[1] rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[2] and of carrying a pistol without a permit in violation of General

---

[1] The defendant was charged by substitute information. The defendant was also originally charged with attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a, but those charges were dismissed at the close of the state's case-in-chief.

[2] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

Statutes § 29-35.[3] The defendant presents the two following issues on appeal: (1) whether the trial court improperly failed to grant the defendant's motion for a new trial without conducting any further inquiry to determine whether alleged prosecutorial misconduct had prejudiced the jury; and (2) whether the trial court improperly instructed the jury by failing to relate the law to the facts of the case with regard to the elements of assault in the first degree, the identification of the perpetrator and the credibility of the witnesses. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1991, Robert Cosme, the victim, lived at the Marina Apartments on Main Street in Bridgeport, across the street from Coamo's Bar. Cosme and James Peace, whose mother also lived at the Marina Apartments, had been involved for several years in a dispute. Peace had been convicted of stealing Cosme's car. After Peace's release from prison, he and Cosme had a fight; both men were arrested and placed on probation. Approximately two weeks prior to June 8, 1991, Peace and Cosme argued because Peace's vehicle was allegedly blocking Cosme's vehicle. The defendant witnessed this argument, and laughed at Cosme.

On June 8, 1991, Cosme was at Coamo's Bar from about 8 p.m. until 11:30 p.m. As Cosme left the bar, he noticed that the defendant was standing outside of the bar talking with a woman. Cosme approached the defendant and asked him why he had laughed at him during his argument with Peace. The defendant responded that he had nothing to do with that incident, and stated, "You think I'm fucking around, Robert, you think I'm fucking around. I'll be back."

[3] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

Cosme perceived the defendant's words as a threat. He went to his apartment to get a knife and returned to the area where he had met the defendant.[4] The defendant, however, was no longer standing outside the bar. Cosme took the knife back to his apartment and then returned to the bar for approximately ten to twenty minutes. When Cosme crossed the street on the way to his apartment, he heard someone call "Hey, Robert." Cosme looked in the direction of the voice and saw the defendant holding a 9 millimeter handgun. The defendant fired three shots at Cosme. The third shot struck Cosme in the right thigh, seriously fracturing his femur. Cosme spent the next three weeks recuperating at Park City Hospital.

The day after the incident, Detective Gregory Iamartino of the Bridgeport police department spoke with Cosme at the hospital. Cosme provided Iamartino with a description of the defendant and the name "Vernon." On June 16, 1991, in response to a phone call from Cosme, Iamartino sent a patrol car to the area of Main and Whiting Streets, where Officer Paul Nikola identified the defendant as having the first name "Vernon" and meeting the physical description provided by Cosme. Nikola then contacted Iamartino, who went to the scene. Iamartino informed the defendant that he was a suspect in the shooting, and asked if the defendant would go with him to the police station and give a statement. The defendant agreed. While at the police station, Iamartino took two photographs of the defendant.

---

[4] The following colloquy occurred between the prosecutor and Cosme:

"[State's Attorney]: Why did you go get a knife?

"[Witness]: Well, because I figured . . . I was going to have to defend myself. He said he was going to come back.

"[State's Attorney]: What did that mean to you?

"[Witness]: I figured he was going to get a weapon or something . . . ."

Iamartino placed the photographs of the defendant in an album containing approximately fifty other photographs. He then gave the album to Cosme, who, without hesitation, chose the photographs of the defendant as being of the person who had shot him. Iamartino then applied for an arrest warrant and subsequently arrested the defendant.

## I

The defendant first contends that we should remand this case to the trial court for a new hearing on his motion for a new trial, due to alleged prosecutorial misconduct that may have prejudiced the jury. The following additional facts are relevant to this claim. Pamela Stewart, a Bridgeport police officer, was a member of the jury. On cross-examination of the defendant, the prosecutor asked the defendant if he knew someone by the name of Victor Martinez[5] or "Ears" Martinez. The defendant denied any personal knowledge of this individual, as the following colloquy ensued:

"[State's Attorney]: Now, in addition to the job that you have, did you have any other jobs in the area of Main and Whiting?

"[Witness]: No, sir.

"[State's Attorney]: You worked for a man named Ears at that location?

"[Witness]: No, sir.

"[State's Attorney]: You know a man named Ears that works out on Main Whiting Street.

"[Witness]: No, sir.

"[State's Attorney]: Do you know a man named Victor Martinez that works out there, sir?

---

[5] Although the prosecutor here referred to Martinez as Victor, Martinez' first name is Hector.

"[Witness]: No, sir.

"[State's Attorney]: Ever heard that name before?

"[Witness]: Yes, sir. I believe I heard that name before."

Defense counsel did not object to this cross-examination. On redirect of the defendant, defense counsel touched on the defendant's knowledge of Ears and Victor Martinez. This exchange occurred:

"[Defense Counsel]: Are they known drug dealers?

"[Witness]: Yes, sir. They are.

"[Defense Counsel]: Have you ever dealt drugs?

"[Witness]: No, sir."

At the hearing on the defendant's motion for a new trial, which, as written, concerned the testimony of one witness, the twelve year old daughter of the victim, counsel for the defense also presented the following: "I would like to make an additional comment, however, on the motion for a new trial. It wasn't until I read the presentence investigation that I realized the potential net effect, disastrous effect, the mention of Mr. Hector Martinez may have had in this trial. As the court is aware, I selected a Bridgeport police officer [Stewart] as a member of this jury and all in all I thought it was a good choice. . . . There was a question that I thought . . . was fair game—are you associated with Hector Martinez—do you know Hector Martinez? I didn't know who he was and the witness answered no, he didn't. And we went on. But now it turns out that Hector Martinez apparently was known by the entire . . . Bridgeport police department as the person that assaulted Sergeant Louis Piccirillo during a drug raid or during some type of an outburst at one of the housing projects. I can only speculate on this argument. It would seem if he was that popular a character and perhaps by

innuendo or whatever, Mr. Shanks, even though he denied his association with this Hector Martinez, that name . . . would obviously, one would think, be knowledge to other police officers on the department. I don't know what effect that had, Your Honor. I can only say that it would appear as though, because of the . . . assault on Louis Piccirillo, [Stewart], who's been . . . [a member of the Bridgeport police department] a long time, I'm sure knows Piccirillo and . . . Martinez, who apparently is a bad, real bad character, and ultimately has been arrested for the assault on Louis Piccirillo, [and] may have had an effect on that juror's . . . thinking processes and one would suspect . . . that outside agency would have influenced the deliberation process of that juror. And in all other respects I stand on what was contained in the written motion . . . ."[6]

"When the verdict in a criminal case is challenged on the basis of allegedly prejudicial remarks made by the prosecutor, the defendant bears the burden of proving such prejudice within the context of the trial as a whole. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Evans,* [10 Conn. App. 605, 608, 524 A.2d 1165 (1987)], quoting *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984)." (Internal quotation marks omitted.) *State* v.

---

[6] We note that the defendant brought this motion for a new trial pursuant to Practice Book § 902, which concerns alleged errors by the trial court during the course of the trial. The defendant's contention of new evidence, namely that of prosecutorial misconduct, should have been brought in a petition for a new trial, pursuant to Practice Book § 904 and General Statutes § 52-270. See *State* v. *Curley,* 25 Conn. App. 318, 595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991). We conclude, however, that the failure of the defendant to bring the motion pursuant to Practice Book § 904 will not preclude our review in this case, as the defendant presented to the trial court the grounds for its request and the trial court ruled upon that request.

*Wilson-Bey,* 21 Conn. App. 162, 171, 572 A.2d 372, cert. denied, 215 Conn. 806, 576 A.2d 537 (1990). While the defendant bears the burden of proof in this matter, "[a] state's attorney should scrupulously avoid questions of probable impropriety . . . . *State* v. *Piskorski,* 177 Conn. 677, 719–20, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). A demonstrated deliberate effort by a prosecutor to influence the jury against the defendant through the attempted introduction of obviously inadmissible evidence may entitle the defendant to a new trial. *United States* v. *Woods,* 486 F.2d 172 (8th Cir. [1973]); *State* v. *Hafner,* 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 [1975]. *State* v. *Baker,* 182 Conn. 52, 58, 437 A.2d 843 (1980)." (Internal quotation marks omitted.) *State* v. *Binet,* supra, 629.

At best, the above exposition by defense counsel during the hearing on a motion for a new trial is an offer of proof. The defendant, however, discussed how an "outside agency" may have impacted the jury decision without presenting any proof of the extrinsic matter claimed to affect the jury. In the appendix of the defendant's brief for this court, he included copies of three newspaper articles and the affidavit in support of an arrest warrant for Martinez, all of which concern the alleged assault by Martinez on Piccirillo. None of these items was offered into evidence or even mentioned at the hearing on the motion for a new trial, and are not proper material for an appendix. See Practice Book § 4065 (d) (3) ("[w]hen error is claimed in any other ruling in a court or jury case, the brief or appendix shall include, where appropriate: the pertinent motion or pleading, if it does not appear in the record, as well as any other document which is a *part of the file on appeal* but is not proper for inclusion in the record" [emphasis added]).[7]

---

[7] We also note the recommended purposes of an appendix as set forth in comment 8 c. to Practice Book § 4065. W. Horton & S. Cormier, Con-

The defendant now asks this court to take judicial notice of those documents and remand the case to the trial court for a more extensive hearing on the motion for a new trial, at which the defendant would present evidence to support the allegations based on the information contained in the articles and affidavit. The defendant compares this situation with one of jury misconduct, where extrinsic evidence allegedly has prejudiced the jury and requires that the trial court conduct an inquiry. See *State* v. *Migliaro,* 28 Conn. App. 388, 611 A.2d 422 (1992); *State* v. *Gonzalez,* 25 Conn. App. 433, 596 A.2d 443, aff'd, 222 Conn. 718, 609 A.2d 1003 (1992). The defendant contends that the mere acknowledgment of the existence of the documents by this court through judicial notice would indicate that some extrinsic evidence was present that may have prejudiced the jury and therefore requires that the case be remanded for a new hearing. We note, however, that only one of the articles that the defendant placed in the appendix was published prior to the jury verdict. In addition, the published article that described the alleged assault on the officer did not even mention Martinez' name.

"There are two types of facts considered suitable for the taking of judicial notice: those which are 'common knowledge' and those which are 'capable of accurate and ready demonstration.' McCormick, Evidence (2d Ed.) § 330, p. 763." *Moore* v. *Moore,* 173 Conn. 120, 123 n.1, 376 A.2d 1085 (1977). The information contained in the articles and affidavits does not fit either of these criteria, and we decline the invitation to take judicial notice of the documents.

We conclude, therefore, that the defendant has failed to present an adequate record for appellate review of this claim.

necticut Practice—Practice Book Annotated, Rules of Appellate Procedure (1994). That comment states in pertinent part: "The most effective use of the appendix today is to reproduce exhibits or lengthy portions of statutes that are to be used in oral argument."

At the motion for a new trial, the defendant asserted that the mention of Martinez may have had a "disastrous effect" on the case. Without presenting any evidence to establish the potential exposure of a member of the jury to some prejudicial extrinsic evidence, the trial court had no basis to determine that "it appears . . . that the jury panel may have been exposed to prejudicial extrinsic evidence." *State* v. *Migliaro,* supra, 28 Conn. App. 396.[8]

"It is not the function of this court to find facts. *State* v. *Reagan,* 209 Conn. 1, 8, 546 A.2d 839 (1988)." *State*

---

[8] In *State* v. *Migliaro,* supra, 28 Conn. App. 396, this court commented, "Here, the trial court was presented with sufficient indicia that at least one juror had been exposed to potentially prejudicial extrinsic evidence to trigger the trial court's duty to investigate the potential jury misconduct further. The trial court *knew that a juror brought a medical book into the courthouse.* It also knew that medical evidence was critical to the jury's resolution of the issue of the cause of the victim's death, the primary and most hotly contested issue in the case." (Emphasis added.) In *State* v. *Gonzalez,* supra, 25 Conn. App. 438, one juror sent the judge a note, after deliberations had begun, requesting to talk with the judge because "something was said by [another juror] that may have prejudiced the jury." The trial court refused, and this court remanded the case for further inquiry. There the trial court had the knowledge that a prejudicial *statement* may have been made, although it did not know the content of that statement. This court most recently decided *State* v. *Brown,* 33 Conn. App. 339, 343, 635 A.2d 861 (1993), in which an anonymous note was sent to the court claiming that an individual named Dana, who had recently served on a jury, reported to the writer of the anonymous note that the jurors had "overheard the sheriffs 'betting that the defendant would be found guilty because he was black and from New York.' In addition, the letter stated that Dana told the author that she had overheard one sheriff tell another that a Wilton detective showed one of the witnesses some pictures because 'the witness couldn't remember what the guy looked like.' " The defendant introduced a claim of jury misconduct at his motion for a new trial. The trial court denied the motion, and this court refused to remand the case for a further inquiry regarding the juror misconduct, reasoning that the trial court knew the nature of the alleged misconduct and had an adequate factual basis to make its conclusion. Id., 346. In the present case, the court had no evidence that a juror may have been *exposed* to extrinsic evidence of any sort, such as a book, statement or conversation linking the defendant to Martinez and Martinez to the alleged assault on the officer, that could have had an impact on the case.

v. *Rios,* 30 Conn. App. 712, 716, 622 A.2d 618 (1993). We are in a position similar to that of the trial court in this case, as we do not have before us the factual background necessary to determine whether the jury panel may have been exposed to prejudicial extrinsic evidence of the sort that requires us to remand the case for a new hearing on the motion for a new trial. The defendant has failed to present an adequate record for reviewing that claim.

## II

The defendant next alleges that the trial court improperly charged the jury by failing to relate the law to the facts of the case with regard to the assault charge,[9] the identification of the perpetrator, and the credibility of the witnesses.[10] The defendant did not submit a request to charge, and made an exception at trial only as to the issue of identification.

## A

The defendant contends that the trial court's failure to relate the facts of the case to the law in its jury instructions regarding the elements of assault in the first degree deprived the defendant of his constitutional due process right to an adequately instructed jury. See *State* v. *Lemoine,* 33 Conn. App. 743, 747–54, 641 A.2d 131 (1994). The defendant concedes that he did not pre-

---

[9] In his reply brief and at oral argument, the defendant waived his claim that the court improperly instructed the jury by failing to relate the law to the facts of the case with regard to the elements of the crime of carrying a pistol without a permit.

[10] The defendant set forth the following in his brief: "The defendant has a fundamental constitutional right to a jury trial. Art I. § § 8 & 19, Conn. Const.; Amend. VI & XIV, U.S. Const . . . . Essential to the jury trial is the right to adequate jury instructions." Although the defendant invokes the state constitution in support of his claims of improper jury instruction, "we limit our analysis to the federal guarantee in light of his failure independently to analyze the state constitution." *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

serve this claim at trial, and now seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In *Golding,* our Supreme Court held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id., 239–40.

While we conclude that the defendant has met the first two prongs of the *Golding* analysis for review of his claim, the defendant has not met the third prong.[11] The first criterion of *Golding* was "designed to avoid remands for the purposes of supplementing the record." *State* v. *Leroy,* 33 Conn. App. 232, 235, 635 A.2d 305 (1993). We are able to examine the transcript of the entire trial, including the jury instructions, and the information presented there is adequate for this court to determine whether a constitutional violation has occurred.

Turning to the second prong of *Golding,* we must consider "whether the instructions given by the trial court were so deficient as to implicate the constitutional right of the defendant to a fair trial. A jury instruction con-

---

[11] We note that "[w]hereas the first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, the third prong constitutes a review of the merits. See *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992) ('[h]aving surmounted the threshold requirements for review . . . the plaintiff is entitled to a determination of the merits of his claim under the third criterion')." *State* v. *Leroy,* 33 Conn. App. 232, 236 n.2, 635 A.2d 305 (1993); *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852 (1993).

forms with constitutional requirements if it provides jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . *State* v. *Avila,* 223 Conn. 595, 602, 613 A.2d 731 (1992). An instruction that fails to satisfy these requirements [violates] the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. Id., 603." (Internal quotation marks omitted.) *State* v. *Wolff,* 29 Conn. App. 524, 530, 616 A.2d 1143 (1992). The defendant's contention that the jury instructions failed to provide an understanding of the elements of the crime charged as they pertained to this case implicates the constitutional right of the defendant to a fair trial.

We cannot conclude, however, that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. The defendant alleges that the jury instructions in this case, specifically that portion in which the trial court related the elements of assault to the specific facts of the case, resemble those found deficient in *State* v. *Wolff,* supra, 29 Conn. App. 530. In that case, the defendant was charged with four crimes, assault in the third degree of a victim over the age of sixty, assault in the third degree, and two counts of unlawful restraint in the second degree. Two of the crimes pertained to one victim, while the other two crimes pertained to a second victim. During its instructions, the court failed to explain which crime corresponded with each victim. This court stated that the "issues in this case were complicated, peculiar, and capable of differing constructions because the case involved two separate victims and similar crimes." Id., 532. The court concluded that "[i]n such a case, 'where the issues are complicated, peculiar, or capable of differing conclusions, comment

by the court is necessary.' *Jacques* v. *Carter,* [2 Conn. App. 27, 33–34, 476 A.2d 621 (1984)]." Id. We further note that "[a] court's charge is not to be examined in a vacuum. Rather, it is to be viewed in the context of the factual issues raised at the trial. See *State* v. *Rose,* [169 Conn. 683, 687, 363 A.2d 1077 (1975).]" *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

This case has a simpler factual and legal background than does *State* v. *Wolff,* supra, 29 Conn. App. 532. Here, the defendant was charged with two distinct crimes, assault in the third degree and carrying a pistol without a permit, and there is only one victim. At the beginning of its instructions, the court made clear that the terms "defendant" and "accused" referred to Shanks. The court read the information and §§ 53a-59 and 29-35. The court then accurately reiterated the law on both crimes, but specifically referred to the "defendant" and "this case," and also noted that the defendant's use of a handgun, if proved, satisfied the requirement of a "deadly weapon" as set forth in § 53a-59. Viewed in the context of the factual issues raised at trial, the instructions set forth the crime of assault in this case clearly and separately from the crime of carrying a pistol without a permit, and sufficiently related the law to the facts of the assault charge. Because we cannot determine that the alleged constitutional violation clearly exists, we therefore conclude that the defendant has failed to meet the third prong of *Golding.*

B

The defendant further claims that the court did not adequately instruct the jury with regard to the credibility of witnesses. The defendant contends that the court specifically pointed out the potential biases in the testimony of the defendant, but failed to enumerate potential biases in some of the state's witnesses, par-

ticularly Cosme and his daughter, thus creating an imbalanced set of instructions. The defendant acknowledges, however, that the court did specifically instruct the jury that the testimony of the police officers, witnesses for the state, did not deserve more credence due to their status. The court also specifically instructed the jury regarding the credibility and the assessment of the qualifications of the state's expert witness, Eric Katz, an orthopedic surgeon, whose deposition was read into the record. The court stated that "[i]n this particular case there was testimony in the form of a deposition that was read to you of an expert witness . . . in weighing the testimony of an expert you apply to him the same general rules that you apply to all witnesses such as bias and interest in the case. In addition you will determine for yourself whether the witness has specialized knowledge and experience in the field upon which his opinion is founded." The court then posed several questions that the jurors could ask themselves in order to evaluate the testimony of the expert witness. The defendant did not preserve at trial the issue regarding instructions on credibility, and seeks review under *Golding*.

We conclude again that the first prong of the *Golding* analysis has been met; there is an adequate record for our review of the constitutionality of this claim. We now proceed to the second prong. "Just as every claim of evidentiary error by the trial court is not truly constitutional in nature . . . every claim of instructional error is not truly constitutional in nature. We have also recognized . . . that claimed instructional errors regarding general principles of credibility are not constitutional in nature. *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991)." (Citations omitted.) *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993). Thus, we must determine whether the alleged violation in this case raises an issue of constitutional significance.

In *State* v. *Walton,* supra, 227 Conn. 63, the defendant claimed that the court had framed the instructions in a biased manner by stating, " 'The state of Connecticut . . . looks to you as sworn officers of this court to deal with this case fairly, firmly and honestly as strong minded men and women and with the interest placed in your hands as an arm of the court to aid and uphold the law of the land by rendering a verdict of guilty if the facts and the law require such a verdict.' " While our Supreme Court noted that the trial court could have chosen more appropriate language, it also determined that the "defendants have clothed a non-constitutional claim in constitutional garb." Id., 64. The court determined that the sentence at issue was "part of a passage that concerns the jury's general duty to consider the evidence carefully and objectively . . . it strains the meaning of constitutional claims to say that this claimed instructional error is constitutional in nature." Id., 65.

In this case, the defendant claims that the jury instructions were unbalanced due to specific comments by the court as to the defendant's credibility, without similar comments as to that of Cosme and his daughter. The defendant argues that in its instructions, the trial court "stressed" that the jury should consider the defendant's interests. In context, the instruction regarding the defendant's credibility, however, was evenhanded. The court instructed the jury as follows: "An accused person is not obligated to take the witness stand in his own behalf. On the other hand, he has a perfect right to do so as the defendant here has done. In weighing the testimony he has given, you should apply the same principles by which the testimony of other witnesses is tested and that necessarily involves a consideration of his interests in the case and the importance to him of the outcome of the trial. An accused person having become a witness stands before

you just like any other witness. He is entitled to a fair and careful consideration of his testimony but at the same time he must have his testimony tested and measured in the same way as any other witness including the elements of his interest in the decision you are to render."

The defendant focuses on the statement that the jury's review of the credibility of the defendant "necessarily involves a consideration of his interests in the case." We conclude that it would "strain the meaning of constitutional claims"; id., 65; to elevate this claimed instructional error to one of constitutional import. Because the defendant has failed to meet the second prong of *Golding* on this issue, we will not review this claim.

C

The defendant also alleges that the trial court failed to instruct the jury properly that the identity of the defendant as the perpetrator had to be proved by the state beyond a reasonable doubt.[12] The defendant did preserve this claim for review. After the court charged the jury, the defendant excepted to the court's instructions. Counsel for the defendant stated: "[T]he only question that I have is that I didn't hear the court indicate that not only must the elements of the crime be proven beyond a reasonable doubt but the identity of the person that committed that, as a threshold issue, must be proven [beyond] a reasonable doubt."

[12] The defendant in his reply brief raised for the first time the issue that the court should have instructed the jury on the dangers of misidentification by the victim-eyewitness. See, e.g., *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972). "It is a well established principle that arguments cannot be raised for the first time in a reply brief. *Protter* v. *Brown Thompson & Co.,* 25 Conn. App. 360, 363–64 n.2, 593 A.2d 524 (1991); *L. F. Pace & Sons, Inc.* v. *Traveler's Indemnity Co.,* 9 Conn. App. 30, 45 n.8, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 866 (1986)." *State* v. *Torres,* 31 Conn. App. 443, 445–46 n.1, 625 A.2d 239 (1993). We decline to review this claim.

"It is axiomatic that a jury must find that the defendant on trial before it was the person who committed the alleged offense in order to render a verdict of guilty." *State* v. *Smith,* 7 Conn. App. 715, 718, 510 A.2d 219, cert. denied, 201 Conn. 804, 513 A.2d 699 (1986). In *State* v. *Walker,* 9 Conn. App. 373, 376–77, 519 A.2d 83 (1986), cert. denied, 202 Conn. 805, 520 A.2d 1286 (1987), we noted that "[t]he court . . . properly instructed the jury that *each essential element, including identity,* had to be proved by the state beyond a reasonable doubt. A review of the charge as a whole leads us to the conclusion that it is not reasonably possible that the jury was misled as to the state's burden of proof." (Emphasis added.)

Our review of the complete jury instructions in this case also leads us to conclude that it is not reasonably possible that the jury was misled as to the necessity of determining the identity of the perpetrator beyond a reasonable doubt. At the outset of the instructions, the court noted that where it used "defendant" and "accused," those terms referred to Shanks. The court further noted that it wanted to make "clear to you— the burden which rests upon the state to prove the accused guilty of the crime charged beyond a reasonable doubt necessarily involves proof that he was present at the scene of the crime when·it was committed."

The court thereafter instructed the jury that in order to find the defendant guilty of the assault charge, "the state must prove beyond a reasonable doubt the following elements: That *the defendant* caused serious physical injury to another person by means of a deadly weapon and that *the defendant* did so with the specific intent to cause such injury to that person." (Emphasis added.) The court continued to refer to the defendant as it explained further the elements of the crime as related to this case. The court concluded by stating,

"If you find that the state has proven beyond a reasonable doubt that *the defendant* caused serious physical injury to another person by means of a deadly weapon, in other words, handgun, and that *the defendant* intended to cause such injury to the victim, your verdict will be guilty of assault in the first degree as to this count." (Emphasis added.)

As to the charge of carrying a pistol without a permit, the court read the statute and then stated: "In order to convict *the defendant* of this offense [the] state must prove beyond a reasonable doubt two essential elements: That *the defendant* carried a pistol or revolver upon his person while outside his dwelling house or place of business and that he did not have a permit." (Emphasis added.) The court further explained the elements of the offense. We conclude that it was not reasonably possible that the jury was misled to believe that the identity of the defendant as the perpetrator of the crimes did not have to be proved beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.